# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**JEFF FRANKE, et al.,**

     Plaintiffs,

     v.

**NORFOLK SOUTHERN RAILWAY CO., et al.,**

     Defendants.

CASE NO. 3:20 CV 2152

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Plaintiffs Jeff Franke, Steven Frye, and Greg Fish bring this suit against Defendants Norfolk Southern Railway Company ("Norfolk Southern"); the Brotherhood of Locomotive Engineers and Trainmen, the International Brotherhood of Teamsters, and Norfolk Southern Northern Lines, Wheeling and Lake Erie General Committee of Adjustment (collectively, "Union Defendants"); and arbitrator David Ray. Plaintiffs – former Norfolk Southern locomotive engineers – allege the Union Defendants (who represented Plaintiffs), Norfolk Southern, and Ray colluded to deprive Plaintiffs of fair and impartial arbitration proceedings. In the Complaint – originally filed in state court, and removed to this Court – each Plaintiff alleges a single count of fraud against all Defendants. *See* Doc. 1-1. This Court has jurisdiction under 28 U.S.C. § 1331.

Currently pending before the Court are Defendants' Motions to Dismiss (Docs. 22, 23) Plaintiffs' Complaint (Doc. 1-1), and Defendants' Motions to Strike the Amended Complaint (Doc. 24) (Docs. 25, 26, 27). Plaintiffs filed an Omnibus Response to both the Motions to Dismiss and Motions to Strike (Doc. 28), and Defendants filed a joint Reply thereto (Doc. 31).

For the reasons discussed below, the Court grants Defendants' Motion to Dismiss (Doc. 22), denies Defendant Ray's Motion to Dismiss (Doc. 23) as moot, and grants Defendants' Motions to Strike (Docs. 25, 26, 27).

**BACKGROUND**

Factual Background[1]

Each Plaintiff in this case worked as a locomotive engineer for Defendant Norfolk Southern. (Doc. 1-1, at ¶¶ 12, 37, 61). Each Plaintiff was represented by the Union Defendants[2] in accordance with the Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA") and a Collective Bargaining Agreement ("CBA"). *Id.* at ¶¶ 3, 11, 36, 60. Each Plaintiff was disciplined by Norfolk Southern and fired. *Id.* at ¶¶ 15-16, 39-40, 68. Each time, the Union appealed the termination to a Public Law Board for arbitration pursuant to the RLA and in accordance with the CBA. *Id.* at ¶¶ 17, 41, 69.

Ray served as the neutral arbitrator in each arbitration as agreed by Norfolk Southern and the Union. *Id.* at ¶¶ 18, 42, 70. Under the terms of the RLA and the CBA, either the railroad or the Union could reject any arbitrator; Plaintiffs assert the Union "collusively" agreed with Norfolk Southern to have Ray serve as the arbitrator, knowing his background as a past Vice President of Labor Relations with Norfolk Southern. *Id.* at ¶¶ 21, 45, 73. They assert "on information and belief" Ray "not only possessed a bias in favor of [Norfolk Southern], evidenced by his past position with [Norfolk Southern], but maintained an undisclosed conflict-of-interest

---

1. At issue – in part – in the motions presently before the Court is whether Plaintiffs should be permitted to file an amended complaint. The Complaint (Doc. 1-1) and Amended Complaint (Doc. 24) differ only slightly. Unless otherwise specified, the facts summarized in this section appear in both versions.

2. Aside from listing them separately in the first paragraph, the Complaint does not otherwise distinguish between the various Union Defendants. *See* Doc. 1-1, at ¶ 1.

with the existence of pension and retirement benefits and stock holdings with [Norfolk Southern] or related corporation for [Norfolk Southern]." *Id.* at ¶¶ 22, 46, 74. They claim Defendants deliberately withheld knowledge of Ray's bias and conflict of interest. Further, Plaintiffs contend "[o]n information and belief" Defendants "concocted a scheme" wherein Ray would favor certain appeals from Divisions whose local chairperson would vote for a particular individual to be General Chairman of Adjustment for the Union, and deny the appeals from those who would not. *Id.* at ¶¶ 27, 51, 79.

Plaintiffs assert the Union Defendants owed them a duty of fair representation, which it failed to fulfill when it did not act fairly, impartially, and in good faith when representing them in these proceedings. *Id.* at ¶¶ 19, 43, 71; *see also id.* at ¶¶ 29, 53, 81 ("[T]he acts by all named Defendants stated and pleaded herein, were acts in concert with each other that amounted to a scheme and conduct rising to the level of corruption, bad faith, collusion and fraud; including representation by the Union that was arbitrary and with hostility and bad faith against [Plaintiffs][.]"). They further assert Ray owed Plaintiffs a duty to comply with federal statutes and regulations as well as the National Mediation Board policy requiring him to have no bias and no financial interest in any party while acting as a neutral arbitrator. *Id.* at ¶¶ 20, 44, 72. Finally, Plaintiffs contend all Defendants had a duty to "allow [their] appeals to be decided on the merits with an unbiased neutral arbitrator that had no conflicts-of-interest and without engaging in an appeal fixing scheme" and "a duty to inform [Plaintiffs] that [their] arbitration[s] had been compromised because of David Ray's bias and conflict-of-interest, and the appearance of an appeals fixing scheme Defendants were engaged in." *Id.* at ¶¶ 32, 56, 83.

Plaintiffs originally sought, *inter alia*, compensatory damages for past and future economic losses and – alternatively to future damages – reinstatement; they further originally

sought expungement and removal of references to the charges and discipline forming the basis of the arbitration. (Doc. 1-1, at 12, 18, 24). The Amended Complaint continues to seek compensatory damages for past and future economic losses, but eliminates references to reinstatement, expungement, and removal of references to the charges and discipline. *See* Doc. 24, at 9, 15, 21. Both versions seek compensatory damages for emotional distress, suffering, humiliation, and embarrassment; punitive damages, and special damages for litigation costs including, but not limited to, expert witness and attorney fees. (Doc. 1-1, at 12, 18, 24); (Doc. 24, at 9, 15, 21).

Prior Proceedings

Defendants removed the case on the basis that Plaintiffs' common law fraud claims were preempted. (Doc. 1). The removal notice asserted: (1) there is limited review of RLA arbitration decisions and such review may only be had in federal court; (2) a duty of fair representation claim arises under the RLA; and (3) allegations of common law fraud in connection with an RLA decision arise under federal law and are preempted by the RLA.

Early in this case, Plaintiffs indicated an intent to file a motion to remand. *See* Doc. 16. The prior judge ordered counsel to exchange letters regarding such a motion. (Doc. 17). That judge reviewed the letters, held a phone conference, and denied Plaintiffs' proposed motion to remand, holding: "Plaintiff[s] argue[] their Complaint raises only state law claims of fraud. Defendants correctly note that the Railway Labor Act ("RLA") preempts Plaintiffs' attempts to limit the scope of their claims and those claims must necessarily arise under federal law." (Doc. 19); *see also* Docs. 19-1 & 19-2 (letters).[3]

---

3. During the time period for the exchange of letters, Plaintiffs attempted to file an Amended Complaint. *See* Doc. 18. Plaintiffs now concede this attempted amendment "was not timely and [was] therefore invalid." (Doc. 28, at 10).

Per the prior judge's instruction, counsel then filed a joint proposed briefing schedule for a motion to dismiss (Doc. 20), and – after transfer – this Court approved it. Defendants filed their Motions to Dismiss the original complaint (Doc. 1-1) – in accordance with that schedule – on January 21, 2021. (Docs. 22, 23). On February 11, 2021, Plaintiffs filed an Amended Complaint. (Doc. 24).

Motions to Strike (Docs. 25, 26, 27)

Norfolk Southern (Doc. 25), the Union Defendants (Doc. 27), and Ray (Doc. 26) move to strike the Amended Complaint (Doc. 24) as: (1) untimely and filed without leave or consent; (2) futile as to the pending Motions to Dismiss; and (3) "an ineffective attempt to divest this Court of jurisdiction." (Doc. 25).

This Court held a phone conference on March 4, 2021. (Non-document entry date March 4, 2021). Plaintiffs then filed their Omnibus Response to the Motions to Dismiss (Docs. 22, 23) and Motions to Strike (Docs. 25, 26, 27). (Doc. 28). With leave of Court, Defendants filed a joint Reply. (Doc. 31).

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. "In determining whether to grant a Rule 12(b)(6) motion, the [C]ourt primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).[4] The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in

---

4. Both parties point to evidence outside the record in their briefing. *See* Doc. 28, at 3-4; Doc. 22-1, at 20. The Court declines to consider such information, but also finds it would not be dispositive of any issue herein even if considered.

5

a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").

Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

Further, Federal Civil Rule 9(b) imposes a heightened pleading requirement and requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." This means parties bringing a fraudulent concealment claim must specify "the who, what, when, where, and how" of the alleged omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co, Inc.*, 683 F.3d 239, 255-56 (6th Cir. 2012) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)). A plaintiff, "at a minimum, 'must allege the time, place, and content of the alleged misrepresentation. . . . ; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).

DISCUSSION

The issues raised by the pending Motions to Dismiss and Motions to Strike (to the extent they are based on the futility of an amendment[5]) – overlap with one another. Therefore, the Court addresses them together.

Remand Arguments

In response to Defendants' Motions to Dismiss, Plaintiffs expend significant effort arguing for a remand to state court. *See* Doc. 28, at 5-10. They attempt, in essence, to re-argue the remand issue presented to the prior judge assigned to this case as to the removed complaint, as well as contend the Amended Complaint (Doc. 24) provides this Court a basis to remand. This Court rejects both arguments.

First, the prior judge assigned to this case already ruled on Plaintiffs' request to remand. *See* Doc. 19. This determination is "law of the case". *See Agostini v. Felton*, 521 U.S. 203, 236 (1997) ("Under [law of the case] doctrine, a court should not reopen issues decided in earlier stages of the same litigation."). Plaintiffs argue this doctrine should not apply as they were not permitted to fully brief the issue. (Doc. 28, at 5). This Court disagrees. Plaintiffs were provided an opportunity to present their position regarding remand in a letter, and again in a phone conference with the prior judge assigned to the case. *See* Doc. 17 (instructing parties to exchange letters regarding proposed motion to remand), Docs. 19-1, 19-2 (letters); Doc. 19 ("This Court reviewed letters exchanged between the parties (attached) on Plaintiffs' desired Motion to Remand. That Motion is denied. Plaintiff[s] argue[] their Complaint raises only state law claims

---

5. The Motions to Strike make procedural arguments against permitting the Amended Complaint, as well as contend the amendment is futile. *See* Docs. 25, 26, 27. Given the unusual procedural timing of events in the early months of this case, this Court declines to grant the Motions to Strike on the procedural bases offered, but – for the reasons discussed herein – finds well-taken Defendants' arguments that the Amended Complaint is futile as to the Motions to Dismiss.

7

of fraud. Defendants correctly note that the [RLA] preempts Plaintiffs' attempts to limit the scope of their claims and those claims must necessarily arise under federal law."). That issue was resolved and this Court will not revisit it.

Second, as Plaintiffs acknowledge, jurisdiction is determined at the time of removal. *Harper v. AutoAlliance Int'l Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). Thus, the Amended Complaint cannot divest this Court of jurisdiction. Although Plaintiffs correctly point out that should a case progress in federal court to the point where only pendent state law claims remain, a federal court has the discretion to remand the case to state court, *see* Doc. 28, at 9 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)), because this scenario is not present in this case, this Court will not revisit the original removal jurisdiction question or apply it to an Amended Complaint filed over four months post-removal.

Third and finally, for the reasons discussed below, this Court concludes Plaintiffs' claims, which are directed at the outcome of their arbitrations – even as asserted in the Amended Complaint – remain preempted by the RLA.

<u>Railway Labor Act & Preemption</u>

Defendants assert that, to the extent Plaintiffs are attempting to modify their Complaint to somehow transport its allegations out of the realm of the Railway Labor Act (and the arguments directed thereat in Defendants' Motions to Dismiss), such efforts are futile. That is, the newly-filed Amended Complaint does not address the underlying arguments presented by Defendants' currently-pending Motions to Dismiss:

> The fundamentals remain the same: The RLA preempts Plaintiffs' claims because they are trying to do an end-run around the RLA-mandated procedures for resolving minor disputes or challenging arbitral awards. Plaintiffs cannot delete a few sentences here and there and try to exclaim that now, somehow, the RLA no longer matters. It remains central to their claims because despite their deletions,

the RLA and the CBA still control whether the arbitral procedures that Plaintiffs complain of were valid or not.

(Doc. 25-1, at 8-9); *see also* Doc. 26, at 1 (Ray's assertion that amendment is futile as to him "as the claims set forth therein are barred by the absolute immunity accorded to arbitrators" as described in Ray's motion to dismiss). For the reasons discussed below, the Court agrees and finds Plaintiffs' amendment does not address the substance of Defendants' Motions to Dismiss.

The Railway Labor Act governs labor disputes between management and labor in the railroad industry. 45 U.S.C. §§ 151, 153. It is intended to promote stability in labor-management relations by providing effective and efficient remedies for labor disputes, thereby preventing interruptions in rail service. *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978).

The RLA divides disputes into two categories: major and minor. Major disputes concern the formation of CBAs, whereas minor disputes deal with the application or interpretation of existing CBAs. *See Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302-03 (1989). Minor disputes are subject to mandatory and binding arbitration. *See* 45 U.S.C. §§ 153 First (i), Second, 184; *Consol. Rail Corp.*, 491 U.S. at 303 ("A minor dispute is subject to compulsory and binding arbitration before the National Railroad Adjustment Board . . . or before an adjustment board established by the employer and the unions representing the employees. The Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction over minor disputes."). Such adjustment boards include Public Law Boards like the one at issue here. *See Bhd. of Locomotive Engineers & Trainmen v. United Transp. Union*, 700 F.3d 891, 899 (6th Cir. 2012). "The mandatory arbitration scheme Congress established is unique to the RLA and is not found in the other major federal labor relations statute that covers private sector employees." *Id.* An arbitral award by such a Board is "final and binding on both parties to the dispute". 45 U.S.C. § 153, First, (m).

9

The RLA permits a party to appeal an arbitration decision but dictates such review is to be had in federal district court, and is limited to three specific grounds: (1) "failure . . . to comply with the requirements of this chapter"; (2) "failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction"; or (3) "fraud or corruption by a member of the division making the order." 45 U.S.C. § 153, First (q); *see also* 45 U.S.C. § 153, First (p) (authorizing such suits "in the District Court of the United States for the district in which [the employee] resides or in which is located the principal operating office of the carrier, or through which the carrier operates", and explaining "[t]he district courts are empowered . . . to make such order and enter such judgment . . . as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.") (emphasis in original).

"[I]n reviewing the decisions of RLA-created arbitration boards, the Sixth Circuit has instructed courts to 'bear in mind the very narrow standard of review that federal courts are to employ when reviewing [labor] arbitration awards.'" *Bhd. of Locomotive Engineers & Trainmen*, 700 F.3d at 899 (quoting *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL-CIO v. ABX Air, Inc.*, 274 F.3d 1023, 1030 (6th Cir. 2001) (applying the standard for federal court review of labor arbitration awards to a dispute under the RLA to determine whether the arbitrator's award "fails to draw its essence from the terms of the collective bargaining agreement")). This court review of an appeal of an RLA arbitration decision is "among the narrowest known to the law." *ABX Air, Inc.*, 274 F.3d at 1030 (citing *Atchison, Topeka, & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563 (1987)).

10

The Sixth Circuit has further explored the purpose of arbitration in the labor context, and of the narrow judicial review of arbitral awards, explaining:

> More than a half century ago, the Supreme Court observed that a determination of the "proper approach" for courts to review labor arbitration awards requires a sensitivity to what makes CBAs fundamentally different from contracts between private parties. While a CBA "states the rights and duties of the parties" like any other contract, "[i]t is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 578, . . . (1960) (citation omitted). A CBA's objective is "to erect a system of industrial self-government" that permits the relationship between the parties to be "governed by an agreed-upon rule of law." *Id.* at 580 . . . Unlike a regular contract, a CBA "covers the whole employment relationship," *id.* at 579, . . . where "'[t]here are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties,'" *id.* (quoting Archibald Cox, *Reflections Upon Labor Arbitration,* 72 Harv. L. Rev. 1482, 1498–99 (1959)). As a result, its effectuation demands the development of "'a common law of the shop which implements and furnishes the context of the agreement.'" *Id.* at 580 . . . (quoting Cox, 72 Harv. L. Rev. at 1499).

*Bhd. of Locomotive Engineers & Trainmen*, 700 F.3d at 899-900. Thus, the court explained the "Supreme Court precedent and the realities of the privately negotiated system of workplace law support application of [a narrow review]" because, *inter alia*, (1) "more searching judicial review of arbitration submissions undermines the congressional policy in favor of quick and inexpensive means of settling workplace grievances to 'achieve the twin goals of industry stabilization and industrial peace'"; and (2) "by denying parties a backdoor to seek review of adverse arbitration awards, a deferential standard properly constrains the judiciary's power to interfere in the privately negotiated labor arbitration system." *Id.* at 902 (quoting *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Local 890L*, 656 F.3d 368, 372 (6th Cir. 2011)).

Plaintiffs attempt to plead their claims as Ohio state law fraud claims – first in the removed Complaint, and continuing in the Amended Complaint. The elements of fraud under Ohio law are: (1) a representation, or, where there is a duty to disclose, concealment

11

of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Gaines v. Preterm–Cleveland, Inc.,* 33 Ohio St.3d 54, 55 (1987).

As Plaintiffs point out, the RLA preempts state-law claims when "the resolution of a state-law claim depends on an interpretation of the CBA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994); *see also Wells v. Nw. Airlines, Inc.*, 25 F. App'x 214, 218 (6th Cir. 2001) (finding Michigan law fraud claim preempted because one element of the claim – whether a material misrepresentation was made – "require[d] an interpretation of the CBA"). These cases – and many others cited by both Plaintiffs and Defendants – address the question of whether a dispute between a carrier and an employee related to a claimant's employment is subject to the mandatory arbitration procedures of the RLA or may be brought independently. *See, e.g.*, *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 792 (6th Cir. 2012) ("If Emswiler's disability discrimination claim is preempted by the RLA, then he is required to pursue the RLA-mandated arbitral process before bringing his claim to court, and his failure to do so precludes consideration of the merits.").

By contrast, here Plaintiffs do not seek to bring a claim regarding their employment specifically, but rather directly challenge the completed RLA arbitration process *itself* (and, by implication and as a result of the damages sought, the outcome therefrom). Neither party cites a case addressing this circumstance – asserting a challenge to the internal workings of the RLA arbitration itself – in the preemption context.

12

At base, however, no matter how artfully pled, the substance of Plaintiffs' claims is a direct challenge to the process (and by implication, the assertedly incorrect outcome) of their respective RLA-governed Public Law Board arbitrations. *See* Doc. 1-1, at ¶¶ 34, 58, 85 & Doc. 24, at ¶¶ 33, 56, 83 (asserting each Plaintiff was "wrongfully disciplined"); Doc. 1-1, at 12, 18, 24 & Doc. 24, at 9, 15, 21 (seeking compensatory damages in the form of past and future lost wages). And they do not bring it through the limited mechanism Congress provided, instead seeking to challenge the results through the back door of state, rather than federal, law. They cannot do so. *See Bhd. of Locomotive Engineers & Trainmen*, 700 F.3d at 902 (explaining Congressional purpose behind narrow review and that "denying parties a backdoor to seek review of adverse arbitration awards properly constrains the judiciary's power to interfere in the privately negotiated labor arbitration system.").

Plaintiffs can no more challenge under state law the *outcome* of their RLA arbitrations – which themselves resolved "minor disputes" involving an interpretation of the CBA, *see Hawaiian Airlines*, 512 U.S. at 261 – than they are permitted to bring a challenge involving the underlying interpretation of the CBA (a so-called "minor dispute") itself under state law. It would make little sense for Congress to strictly limit review of RLA arbitration decisions, but to permit state law challenges to the same. *See Bhd. of Locomotive Engineers & Trainmen*, 700 F.3d at 899-902 (discussing the purpose of a narrow standard of review). That is, Congress created a mandatory arbitral scheme for minor disputes, and an exclusive, narrow mechanism by which to challenge it. Any challenge to that arbitral result is thus completely preempted by the RLA's exclusive avenue for review. *See, e.g.*, *Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833, 837 n.1 (8th Cir. 2020) ("the Railway Labor Act provides limited judicial review of adjustment-board decisions . . . which is consistent with a scheme that is completely preemptive[.]"); *see*

13

*also Cole v. Erie Lackawanna Ry. Co.*, 541 F.2d 528, 532 (6th Cir. 1976) ("It is clear from the above legislative history that Congress intended the district courts to exercise limited judicial review over determinations of the NRAB and over determinations of special adjustment boards."); *Murray v. Consol. Rail Corp.*, 736 F.2d 372, 374 (6th Cir. 1984) (holding that plaintiff could not collaterally attack a Public Law Board decision before the National Railway Adjustment Board, because "Congress has indicated its desire that such challenges be appealed directly to the district court."). This Court thus finds the RLA – with its intentionally narrow review of arbitral decisions, and specific mechanism by which to bring a fraud challenge to an RLA arbitration – completely preempts Plaintiffs' state-law fraud challenges to the results of their arbitrations.[6]

Motions to Dismiss

Having determined the fraud allegations of Plaintiffs' Complaint – and Plaintiffs' proposed Amended Complaint – as necessarily directed at the outcome of their arbitrations, are

---

6. Further illustrative of this point, a cursory review of the "injury" element of an Ohio state law fraud claim in these circumstances demonstrates evaluation of such a claim "depends on an interpretation of the CBA." *Hawaiian Airlines*, 512 U.S. at 261. To evaluate whether Plaintiffs suffered an injury as a result of the fraud alleged here, the Court would necessarily have to examine whether Plaintiffs' RLA-governed arbitral awards were incorrect or wrongful, which would involve an interpretation of the CBA. First, the Complaint (and Amended Complaint) ground the requirement to select a neutral arbitrator in the CBA itself. *See* Doc. 1-1, at ¶¶ 21, 45, 73 ("Under the terms of the RLA and the CBA, either the railroad or the Union may reject any arbitrator . . ."); Doc. 24, at ¶¶ 21, 44, 71 (same). Second, the Complaint and Amended Complaint assert part of the basis for their claims is their "wrongful" discipline, which necessarily implicates the CBA and suggesting, by implication, that the outcome of the arbitration was incorrect. *See* Doc. 1-1, at ¶¶ 34, 58, 85; Doc. 24, at ¶¶ 33, 56, 83. Third, although the Amended Complaint eliminates references to reinstatement, expungement, and removal of references to the charges and discipline, it still asserts damages in the form of compensatory damages for past and future economic losses. *See* Doc. 1-1, at 12, 18, 24; Doc. 24, at 9, 15, 21. The only way this Court could evaluate such claims would involve looking behind the arbitral result to the substance of Plaintiffs' terminations, which (by definition, since they were sent to arbitration) were related to "minor disputes", which, by definition, involve application or interpretation of existing CBAs. *See* 45 U.S.C. § 153, First (i); *Hawaiian Airlines*, 512 U.S. at 261.

preempted by the RLA, the Court turns to the substance of Defendants' Motions to Dismiss. Plaintiffs – having focused their opposition almost exclusively on arguing the RLA does not apply – have not substantively responded to Defendants' arguments regarding their inability to meet the relevant pleading standards for fraud under the RLA or otherwise.

Preliminarily, Plaintiffs contend it is inappropriate to apply federal pleading standards to what they assert is a state law complaint. But federal pleading standards apply to cases in federal court, even those removed from state court. *See* Fed. R. Civ. P. 81(c); *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."); *Smith v. Litton Loan Servicing, L.P.*, 2011 WL 4696177, at *1 (N.D. Ohio) ("Even in cases removed from state court, the adequacy of pleadings is measured by the federal rules.") (quoting *Varney v. R.J. Reynolds Tobacco Co*., 118 F. Supp. 2d 63, 67 (D. Mass. 2000)); *Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 966-67 (E.D. Tenn. 2010) ("Although the complaint was filed in state court, it was eventually removed to federal court. As a result, the complaint is subject to federal pleading requirements[.]").

Plaintiffs rest their fraud claims on two pillars. First, they assert – "on information and belief" – Ray was biased in favor of Norfolk Southern and had a conflict of interest based on (1) his past employment with Norfolk Southern, and (2) his "likelihood of" possession of Norfolk Southern retirement benefits and stock holdings. (Doc. 1-1, at ¶¶ 21-22, 45-46, 73-74). Second, they assert – again "[o]n information and belief" – Defendants "concocted a scheme" wherein Ray would favor certain appeals from Divisions whose local chairperson would vote for a particular individual to be General Chairman of Adjustment for the Union, and deny the appeals from those who would not. *Id.* at ¶¶ 27, 51, 79. The Court addresses these claims in turn.

*Bias or Prejudice*

As set forth above, decisions of an RLA Public Law Board "are subject to very limited judicial review." *United Transp. Union v. Cuyahoga Valley Ry. Co.*, 979 F.2d 431, 435 (6th Cir. 1992) (citing 45 U.S.C. § 153 First, (q)). A district court may set aside or remand a Public Law Board determination only for: (1) "failure . . . to comply with the requirements of this chapter"; (2) "failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction"; or (3) "*fraud or corruption by a member of the division making the order.*" 45 U.S.C. § 153, First (q) (emphasis added).

"Fraud in this context is understood to mean fraud by a member of the Board, not fraud by a party." *Green v. Grand Trunk W. R. Inc.*, 155 F. App'x 173, 176 (6th Cir. 2005); *see also Fine v. CSX Transp., Inc.* 229 F.3d 1151 (6th Cir. 2000) (table) ("Section 153(q) makes an exception for fraud or corruption by a member of the Board: fraud by a party is not an exception to the finality accorded an arbitration decision."). "The type of fraud contemplated by the RLA is the so-called 'extrinsic' fraud that will cause the innocent party to lose regardless of its argument 'because the case is not decided on its merits'" and "[t]he RLA allows review of decisions tainted by fraud to enable the 'district court to correct errors not preventable by the litigants themselves.'" *Zurawski v. Se. Penn. Transp. Auth.*, 2010 WL 1946922, at *6 (E.D. Pa.) (quoting *Pitts v. Nat'l R.R. Passenger Corp.*, 603 F. Supp. 1509, 1517 (N.D. Ill. 1985)); *see also Pac. & Arctic Ry & Nav. Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991) (agreeing that test for fraud under the RLA requires "an extremely high degree of improper conduct" – higher than the common law standard – due to "the limited power of review we have over arbitration awards under the RLA").

16

But conclusory assertions of bias or prejudice by a Board member (here, Ray) – without more – are insufficient to plead fraud under the RLA. As another Judge of this Court explained when presented with nearly identical allegations, "in an RLA proceeding, prejudice, such as that which plaintiffs attribute to Mr. Ray, 'does not amount to "fraud or corruption."'" *James v. Norfolk S. Ry. Co.*, 2020 WL 1316513, at *4 (N.D. Ohio) (quoting *Camilien v. Am. Airlines, Inc.*, 1999 WL 1288955, at *2 (E.D.N.Y.)); *see also Dement v. Richmond, Fredericksburg & Potomac R. Co.*, 845 F.2d 451, 459 (4th Cir. 1988) (mere "allegations that . . . Board members were 'prejudiced' do not amount to a charge of 'fraud or corruption' within the meaning of the RLA" where plaintiff alleged one member "was necessarily biased by virtue of his position as the [defendant's] Director of Personnel"). The *Dement* court explained that "without some evidence that Griffin was involved in a conspiracy to deprive [the plaintiff] of his contractual rights, the simple fact that he was employed by the [Defendant] does not provide a ground for judicial review." 845 F.3d at 459.

Thus, the conclusory allegations of bias and conflict-of-interest attributed to Ray in the Amended Complaint are insufficient to state a claim for fraud to under the RLA just as they were insufficient in *James*:

> Among other things that, had plaintiffs included them, might put some sinew on these barebone assertions would have been Mr. Ray's period of employment or departure/retirement date, the nature of his duties, particularly the extent to which he may have had direct or indirect contact with the plaintiffs, and the extent to which such contacts, if any, were unfavorable to them or their overall well-being as employees.
>
> Instead, all we have is the bald assertion that Mr. Ray, as a former official, was biased in favor of NS.
>
> Similarly, the complaint provides no factual information about alleged financial ties with the company. We do not know whether there are, in fact, any such ties, and, if so, of what sort they may be. One can speculate that Mr. Ray may have a

17

> pension or other retirement-related benefits. But speculation is no substitute for
> facts.

2020 WL 1316513, at *3.

Further, the Sixth Circuit has explained claims premised on "information and belief" such as those here (Doc. 1-1, at ¶¶ 22, 46, 74) can survive a motion to dismiss, but "they 'must set forth a factual basis for such belief,' and Plaintiffs cannot 'base claims of fraud on speculation and conclusory accusations.'" *Smith v. General Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006)). Plaintiffs have not pleaded any more specific facts here regarding Ray's alleged bias or conflict of interest than did the *James* plaintiffs. Their conclusory fraud claims based thereupon thus fail to satisfy the standard for review of an RLA arbitration decision due to fraud.

And because fraud by a party is not among the narrow avenues permitted for review of an RLA arbitral award, *Green*, 155 F. App'x at 176, the fraud claims against the Union Defendants and Norfolk Southern – to the extent they are intended to invalidate the arbitration determination – also fail to state a claim under the RLA.[7]

Moreover, independent of the RLA, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr.*, 683 F.3d at 247; *see also United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) ("To

---

7. Furthermore, even if such a claim were permitted under the RLA or state law, such fraud claims asserted against the Union Defendants or Norfolk Southern – to the extent they are constructed upon the failure to disclose Ray's alleged bias or conflict-of-interest must also fail because (as pled in either the Complaint or Amended Complaint), there was nothing to disclose. *See James*, 2020 WL 1316513, at *5.

satisfy Rule 9(b), a complaint of fraud, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.") (alteration in original) (citation and internal quotation marks omitted). As the Sixth Circuit explained in *Republic Bank & Trust Company*, "even if Republic could sustain its claim by showing that Bear Stearns was aware of its own financial weakness, and thus materially misled Republic, its claim in this instance would still fail because it does not plead enough factual matter to raise its allegations about Bear Stearns's knowledge of its own precarious financial position above mere speculation." 683 F.3d at 254. Similarly here, Plaintiffs have not pleaded enough factual matter to raise their allegations of Ray's bias or conflict-of-interest "above mere speculation." *Id.* As such, the Complaint's fraud allegations fail to satisfy the "particularity" standard of Federal Rule of Civil Procedure 9(b).

*Collusion / Conspiracy*

The second basis upon which Plaintiffs assert fraud is – again, "on information and belief" – the alleged collusive scheme between all Defendants "where Ray would favor the appeals which came from Divisions (locals) whose local chairman would vote for Dewayne Dehart to be General Chairman of Adjustment for the Union and would deny more meritorious appeals from Division[s] (locals) whose local chairman would not vote for said General Chairman." (Doc. 1-1, at ¶¶ 27, 51, 79). As the *Dement* court explained,  "without some evidence that Griffin was involved in a conspiracy to deprive [the plaintiff] of his contractual rights, the simple fact that he was employed by the [Defendant] does not provide a ground for judicial review." 845 F.3d at 459. On its face, thus, this appears to be the type of fraud for which the RLA permits a court to review an arbitral award.

19

But again, the conclusory, non-specific, "information and belief" allegations of conspiracy and collusion in the Complaint and Amended Complaint are insufficient to satisfy Rule 9(b). To maintain a fraud-by-omission claim, Plaintiffs "must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [Defendants] obtained as a consequence of the alleged fraud." *Republic Bank & Tr. Co.*, 683 F.3d 239, 256 (6th Cir. 2012). And "conclusory allegations of a conspiracy are insufficient." *Twombly*, 550 U.S. at 555.

Plaintiffs' Complaint (and Amended Complaint) simply assert the Defendants generally (and vaguely) concocted and implemented the above-described appeal fixing scheme. But Plaintiffs do not assert these claims with any specificity. As explained in *James*: "Plaintiffs fail to support their allegations of collusion and conspiracy with facts as to who agreed with whom to do what was unlawful under the RLA or to the detriment of the plaintiffs." 2020 WL 1316513, at *5. Plaintiffs do not identify any specific Union officials or specific Norfolk Southern personnel who engaged in this scheme. And again, these claims are pled upon information and belief, with no material facts alleged to support said beliefs. *Smith*, 988 F.3d at 885 (claims premised on "information and belief . . . 'must set forth a factual basis for such belief,' and Plaintiffs cannot 'base claims of fraud on speculation and conclusory accusations.'" (quoting *Sanderson*, 447 F.3d at 878)). Furthermore, nowhere does the Complaint or the Amended Complaint connect the scheme to a particular injury suffered by Plaintiffs. That is – the pleadings do not connect the alleged collusion and conspiracy to the outcome of their individual appeals.

As such, the Court finds the collusion/conspiracy allegations fail to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b).

Union Defendants' Duty of Fair Representation

Defendants' Motion to Dismiss expends significant analysis explaining Plaintiffs' duty of fair representation claims – which it reads into Plaintiffs' complaint – must also be dismissed. *See* Doc. 22-1, 2 n.2 ("[E]ach of Plaintiffs' Counts are entitled 'Fraud.' That said, for the reasons explained below, Plaintiffs also lodge conclusory duty of fair representation allegations against the Union Defendants, which also cannot survive the applicable pleading standards described herein."); *see also* Doc. 22-1, at 14-21 (explaining why duty of fair representation claims should be dismissed). In their Omnibus Response, Plaintiffs expressly disavow any such independent duty of fair representation claims. *See* Doc. 28, at 15 ("Plaintiffs did not include any cause[] of action . . . [for] failure of any union's duty of fair representation. To the extent that Plaintiffs discussed the rights and responsibilities of the Parties under the RLA, they did so to provide the necessary context to allow a fact-based inquiry into their claims."). In Reply, Defendants contend Plaintiffs' state law "fraud" claims against the Union are *necessarily* federal duty of fair representation claims under the RLA. *See* Doc. 31, at 14-17. [8]

---

8. "A union's duty of fair representation to its members is judicially implied under the Railway Labor Act." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). This duty requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177 (1967) (citations omitted). The Union Defendants contend Plaintiffs' state law fraud claim against them is necessarily a duty of fair representation claim arising under the RLA and preempted by federal law, despite Plaintiffs' vehement assertions to the contrary. *See* Doc. 31, at 14-17 (citing, *inter alia*, *Nellis v. Air Line Pilots Ass'n*, 805 F. Supp. 355, 360-61 (E.D. Va. 1992) ("In essence, the claim in each of these counts is that the plaintiffs were not fairly represented by the Union. From this, preemption follows for it seems apparent that even though it is possible for a union to assume duties in excess of the duty of fair representation, such duties cannot be mere refinements of what constitutes the duty of fair representation.") (finding that claims arising out of a Union's collective bargaining agreement duties are governed by the federal duty of fair representation), *aff'd*, 15 F.3d 50 (4th Cir. 1994)); *see also May v. Shuttle, Inc.*, 129 F.3d 164, 179 (D.C. Cir. 1997) (holding RLA duty of fair representation claim preempted "identical" state law claims of fraud and deceit).

First, the Court is somewhat reluctant to address causes of action Plaintiffs did not expressly plead, and which Plaintiffs expressly disavow.

However, second, the prior judge assigned to this case arguably already determined that these claims against the Union Defendants are preempted by the RLA. *See* Doc. 19 ("the Railway Labor Act ("RLA") preempts Plaintiffs' attempts to limit the scope of their claims and those claims *must necessarily arise* under federal law.") (emphasis added).

And third, and most importantly, regardless of how characterized – as a fraud claim, or a duty of fair representation claim – the claim against the Union Defendants is based upon the alleged fraud arising out of Ray's bias or conflict of interest and/or the alleged appeal fixing scheme – it is insufficiently pled both in the Complaint and Amended Complaint – as set forth above. That is, to the extent Plaintiffs assert the Union Defendants (again, collectively, without specificity) committed fraud by failing to inform Plaintiffs of Ray's bias or conflict of interest or by participating in a collusive scheme, that foundational fraud is not adequately pled and therefore cannot survive the motion to dismiss. Just as in *James*:

> [The Complaint] does not indicate who in their union knew of the collusion/conspiracy and had reason – which plaintiffs fail to show existed – to believe Mr. Ray would favor [Norfolk Southern], when such knowledge arose, or what risk actually existed. (None of which was possible, in any event, due to the complaint's failure to show Ray would favor the railroad . . . Moreover, plaintiffs have not plead facts to show how, given the lack of adequate allegations as to Mr. Ray's bias and prejudice, any failure to inform plaintiffs was misleading.
>
> Plaintiffs' vague and vacuous assertions that the union, as a whole, engaged in fraudulent concealment/nondisclosure when it agreed with NS to have Mr. Ray as arbitrator meets neither *Iqbal/Twombly* nor Rule 9(b).

2020 WL 1316513, at *6; *see also James*, No. 19-1498 (N.D. Ohio) (Doc. 56) ("I have already held the complaint's fraud allegations are inadequate. Those same conclusory allegations are no

more sufficient to state fraud claims against the Union Defendants than they were to support a fraud claim against NS.").

The same is true if the same facts are characterized as a duty of fair representation claim against the Union Defendants as such a claim is still constructed on the faulty foundation of conclusory allegations of bias, conflict-of-interest, and "collusion". *See, e.g.*, *Robinson v. Nat'l R.R. Passenger Corp.*, 1995 WL 444322, at *8 (S.D.N.Y.) (a breach of duty of fair representation claim that "amounts to a charge of fraud . . . must be alleged with particularity under Rule 9(b) of the Federal Rules of Civil Procedure."); *see also James*, 2020 WL 1316513, at *4 ("Mr. Ray's asserted, but not adequately alleged bias and prejudice are the linchpins of plaintiffs' fraud and duty of fair representation claims. But, so far as their complaint goes, 'there is no there there.'").

<u>Leave to Amend</u>

Plaintiffs have not directly responded to these arguments – made by Defendants in their Motions to Dismiss – rather choosing to focus almost exclusively on their argument that their Complaint and Amended Complaint raise only state law claims.

At the end of their opposition brief, Plaintiffs request that "should the Court find that Plaintiffs['] case should not be remanded and that the state complaint does not state sufficient facts to meet federal standard of pleading, [they] would ask that [the Court] give Plaintiffs an opportunity to move for leave to amend their complaint before ordering the case dismissed." (Doc. 28, at 15).

While a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court must have before it the substance of the proposed amendment to determine whether "justice so requires." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017).

Further, "a bare request in an opposition to a motion to dismiss . . . is not a motion to amend." *Louisiana Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010). (internal quotation marks and citation omitted)).

First, Plaintiffs were already on notice that their complaint was subject to federal pleading standards when the prior judge assigned to this case held it was properly removed and "the Railway Labor Act ("RLA") preempts Plaintiffs' attempts to limit the scope of their claims and those claims *must necessarily arise* under federal law." (Doc. 19) (emphasis added).

And second, Plaintiffs have already had an opportunity to present the Court with an Amended Complaint (Doc. 24) in response to Defendants' specific arguments for dismissal (which included the above-addressed assertions that the RLA preempted Plaintiffs' state-law fraud claims, and that Plaintiffs failed to plead their fraud claims with particularity), *see* Doc. 22-1. And this Amended Complaint – for the reasons discussed above, does not address the Railway Labor Act preemption issue limiting review of RLA-governed arbitral awards. Nor does that Amended Complaint even attempt to address the fundamental fraud pleading flaws identified by Defendants' Motions. Given the atypical procedural initiation of this case, the Court declines to strike the Amended Complaint for the timing reasons Defendants proffer. But at the same time, the Court declines to give Plaintiffs what they conclusorily request, and what would be, in essence, a third bite at the same apple. *See Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) ("Plaintiffs are not entitled to a directive from the district court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.") (internal quotation and citation omitted).

Defendant Ray's Immunity Argument

Because the Court finds all Defendants are entitled to dismissal based on the above analysis, it need not reach Defendant Ray's independent argument that he is entitled to absolute immunity from suit in his role as arbitrator. *See* Doc. 23-1, at 2 ("*In addition* to the bases for dismissal set forth in the Motion to Dismiss filed by all Defendants herein, Ray has an additional basis for dismissal on the grounds of the absolutely immunity accorded to arbitrators.") (emphasis added).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 22), be and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendant Ray's Motion to Dismiss (Doc. 23), be and the same hereby is, DENIED as MOOT; and it is

FURTHER ORDERED that Defendants' Motions to Strike (Docs. 25, 26, 27), be and the same hereby are, GRANTED on the basis that the Amended Complaint (Doc. 24) is futile as to the arguments presented in support of dismissal.


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE